IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JEAN M. WRIGHT, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> HILLDRUP MOVING & STORAGE, ) <br> ) <br> Defendant. ) <br> _____) | Civil Action No. 1:16-cv-1349 (AJT/JFA) |

## **MEMORANDUM OPINION AND ORDER**

*Pro se* Plaintiff Jean Wright ("Plaintiff" or "Ms. Wright") filed this action on October 27, 2016, asserting claims against her former employer, Defendant Hilldrup Moving and Storage ("Defendant" or "Hilldrup") for discrimination and hostile work environment on the basis of her race and gender in violation in Title VII, retaliation in violation of Title VII, and wrongful discharge in violation of Virginia state law. Construing her complaint liberally given her *pro se* status, Plaintiff also asserts claims for discrimination and hostile work environment on the basis of her age, as well as retaliation, in violation of the Age Discrimination in Employment Act ("ADEA").

Pending before the Court are (1) Cross Motions for Summary Judgment by Defendant [Doc. No. 21] ("Defendant's Motion for Summary Judgment") and Plaintiff [Doc. No. 32] ("Plaintiff's Motion for Summary Judgment"), and (2) Defendant's Motion to Dismiss Complaint for Lack of Subject Matter Jurisdiction and Failure to State a Claim upon Which Relief Can Be Granted [Doc. No. 9] (the "Motion to Dismiss") (collectively, the "Motions"). On

Friday, May 19, 2016, the Court held a hearing on the Cross Motions for Summary Judgment, following which the Court took the Motions under advisement.

Upon considerations of the Motions, the filings of the parties in support thereof and in opposition thereto, the arguments of counsel and Ms. Wright at the May 19, 2017 hearing, and for the following reasons, Plaintiff's Motion for Summary Judgment is DENIED and Defendant's Motions are GRANTED in part and DENIED in part. The Motion to Dismiss is GRANTED on the grounds that the Court does not have subject matter jurisdiction over any of Plaintiff's Title VII claims and is otherwise DENIED as moot; Defendant's Motion for Summary Judgment is GRANTED as to those remaining ADEA and Virginia law claims over which the Court has subject matter jurisdiction; and this case is DISMISSED.

## BACKGROUND

The following facts are undisputed or, when disputed, taken in the light most favorable to Plaintiff:

Hilldrup hired Ms. Wright as an administrative assistant in its Information Services Department in July 2015. She was an at-will employee. In December 2015, Ms. Wright raised an issue with her direct supervisor, Scott Fitzgerald, regarding certain flex time. On April 14, 2016, Mr. Fitzgerald and Roger Carroll, Senior Vice President of Information Services and Chief Information Officer, to whom all of the Information Service Department reported, conducted a six-month performance review with her. The review identified shortcomings in Plaintiff's performance (she was given a rating of 1.25 out of 4), to which Ms. Wright took exception.

In early June 2016, Ms. Wright approached Beth Williams, Vice President of Human Resources, to discuss filing a complaint against Mr. Carroll for harassment. Ms. Williams told Ms. Wright that she would need to file a formal complaint and that she would provide Ms.

Wright with the form to do so. On Tuesday, June 7, 2016, Ms. Williams emailed Ms. Wright the form, apologizing for the delay in providing it to her and explaining that she had a family emergency the prior week. Ms. Williams received no response to this email. She followed up on Monday, June 13, 2016. On June 14, 2016, Ms. Wright responded, telling Ms. Williams that she decided not to file a formal complaint with Hilldrup "due to the lack of concern and seriousness displayed from all parties involved here at Hilldrup." She informed Ms. Williams that she had "been advised to seek counseling elsewhere." On June 21, 2016, Ms. Williams notified Ms. Wright that she was still available to meet and discuss her concerns further, if Ms. Wright would like, and that she would move forward to investigate the complaint in any event. On Tuesday, June 28, 2016, Ms. Williams emailed Ms. Wright to tell her that she would like to meet with her to discuss the results of her investigation. Ms. Wright responded that she did not have any time that afternoon, and that she was unable to meet the following morning because she was going on vacation on Friday and would be busy until then. In the same email, Ms. Wright informed Ms. Williams that she had filed a complaint with the U.S. Equal Employment Opportunity Commission (the "EEOC") instead of filing the complaint with Hilldrup's Human Resources. Also on June 28, 2016, Ms. Wright emailed Mr. Carroll, informing him that the matter was under investigation by the EEOC and that he should only communicate with her through email.[1]

---

[1] From the exhibits Ms. Wright submitted to the Court, it appears that she first called the EEOC on June 1, 2016 to discuss her situation at Hilldrup. The EEOC responded in a letter dated June 3, 2016, attaching an intake questionnaire for her to fill out, which she did on June 8, 2016. On June 17, 2016, the EEOC sent Hilldrup notice of Ms. Wright's charge, which explained that it was investigating alleged discrimination against Ms. Wright based on age and retaliation. In connection with this litigation, Defendant obtained a copy of the Charge from the EEOC through a Freedom of Information Act request. The official Charge was dated July 1, 2016 and stamped received by the EEOC on July 22, 2016. In it, Ms. Wright asserted discrimination based on "retaliation," "age," and "other (bullying/harassment)" and gave the following details:

> I have been employed by the above Respondent from 7/20/2015 and am still employed. My job classification is Administrative Assistant.

3

The next morning, June 29, 2016, Ms. Williams responded to Ms. Wright, telling her that Hilldrup was aware of the EEOC Complaint and asking her to meet with her, which Ms. Wright did. In that email, Ms. Williams advised Ms. Wright that she could not prohibit her boss, Mr. Carroll, from speaking with her.

On August 3, 2016, Mr. Fitzgerald and Ms. Williams conducted a 12-month performance review with Ms. Wright, which again discussed Hilldrup's concerns with Ms. Wright's interpersonal issues. Mr. Fitzgerald also drafted a performance improvement plan, which included weekly meetings between Ms. Wright, Mr. Carroll, and Mr. Fitzgerald between August 12, 2016 and October 7, 2016 to provide Ms. Wright with feedback. Ms. Wright again took exception to her review and drafted a rebuttal to the criticisms. Mr. Carroll then drafted an addendum to her performance review further detailing her performance issues.

On August 5, 2016, Ms. Wright sent Ms. Williams an email asserting that she had been subject to a hostile workplace environment. On August 15, 2016, Ms. Wright and Ms. Williams met to discuss Ms. Wright's concerns and her request to be transferred to another department at Hilldrup. In a follow-up email, Ms. Williams, noting that Hilldrup had found no evidence of wrongdoing, informed Ms. Wright that Hilldrup was nonetheless instituting provisions to keep verbal communications between Ms. Wright and Mr. Carroll to a minimum and to have a third-

---

I have been subject to disparate treatment and adverse employment terms and conditions by my Supervisor Scott Fitzgerald (30's) and VP Roger Carroll (56). From December 2015 to May 2016, on several occasions, I was subject to intimidation, disrespect and negative performance review by the above management team. On or about 5/26/216, I spoke with Human Resources Director Beth Williams (40's) about the mistreatment I received and inquired about possible grievance filling. I believe that the disparate treatment and negative review was the result of discrimination against me due to my age (56).

I believe that I have been discriminated and retaliated against, due to my age (56), in violation of the Age Discrimination in Employment Act of 1967.

[Doc. No. 10-1.] On July 28, 2016, the EEOC sent Ms. Wright the Dismissal and Notice of Rights in response to her Charge.

party present whenever interaction between Ms. Wright and Mr. Carroll was required. On September 6, 2016, Ms. Wright sent Mr. Carroll an email informing him that he violated this policy when he spoke with her without anyone else present in her section of the office. By this time, Ms. Wright was openly recording her interactions and meetings with certain Hilldrup employees, including her weekly meetings with Mr. Carroll and Mr. Fitzgerald.[2]

In September 2016, Ms. Wright interviewed with Thomas Hinkley, Hilldrup's Senior Vice President of Commercial Sales, for another position in Hilldrup but was not selected. According to Mr. Hinkley, he did not select Ms. Wright because he selected a more qualified candidate. On October 6, 2016, Hilldrup terminated Ms. Wright. Hilldrup hired Steven Curtis to replace Ms. Wright. Mr. Curtis had retired from Hilldrup in November 2015 and is 65 years old.

## STANDARD OF REVIEW

### Fed. R. Civ. P. 12(b)(1)

Hilldrup contends that the Court is without subject matter jurisdiction with respect to Plaintiff's sex and race discrimination and hostile work environment claims and all retaliation claims based on her filing of the EEOC Charge. A Rule 12(b)(1) motion is the appropriate vehicle to contest subject matter jurisdiction. The plaintiff bears the burden of establishing the court's subject matter jurisdiction when contested under Rule 12(b)(1). *Trinity Outdoor, L.L.C. v. City of Rockville*, 123 F. App'x 101, 105 (4th Cir. 2005) (per curiam). In analyzing motions to dismiss for lack of subject matter jurisdiction, the court is entitled to review materials outside the pleadings without converting the proceedings to one for summary judgment. *See White Tail*

---

[2] Plaintiff submitted to the Court as exhibits audio recordings of certain of her conversations with Ms. Williams, Mr. Carroll, and Mr. Fitzgerald, including her annual review with Ms. Williams and Mr. Fitzgerald, an August 2016 meeting with Ms. Williams, and her weekly meetings with Mr. Carroll and Mr. Fitzgerald. The Court has also reviewed these recordings in its consideration of the Cross Motions for Summary Judgment.

*Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005); *Velasco v. Government of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004). Additionally, the district court analyzing the motions "should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Richmond, Fredericksburg & Potomac R. Co. v. U.S.*, 945 F.2d 765, 768 (4th Cir. 1991) (citations omitted). If a district court lacks subject matter jurisdiction over an action, the action must be dismissed. *U.S. ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009).

<u>Fed. R. Civ. P. 56</u>

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996). The party seeking summary judgment has the initial burden to show the absence of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). To defeat a properly supported motion for summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 247-48 ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."). Whether a fact is considered "material" is determined by the

6

substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. The facts shall be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party. *Id.* at 255; *see also Lettieri v. Equant Inc.*, 478 F.3d 640, 642 (4th Cir. 2007).

## ANALYSIS

### A. Subject Matter Jurisdiction

As an initial matter, the Court only has subject matter jurisdiction over federal "claims that were administratively exhausted before the EEOC." *Wright v. Williamsburg Area Med. Assistance Corp.*, No. 4:12-cv-152, 2014 WL 1056719, at *1 (E.D. Va. Mar. 18, 2014), *aff'd*, 585 F. App'x 143 (4th Cir. 2014) (citing *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009)). "'Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit.'" *Jones*, 551 F.3d at 300 (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996)). "Thus, a claim in formal litigation will generally be barred if the EEOC charge alleges discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex." *Id.* Here, the Court does not have jurisdiction over Plaintiff's Title VII sex and race based discrimination, retaliation, and hostile work environment claims.[3] Ms. Wright's EEOC Charge was limited to complaints about age-based discrimination, retaliation, and harassment. *See* [Doc. No. 10-1]. Therefore, the Court will grant Defendant's Motion to

---

[3] Defendant also contends that the Court lacks subject matter jurisdiction over any of Plaintiff's claims asserting retaliation based on her EEOC charge because Plaintiff did not file a subsequent charge with the EEOC alleging retaliation on this basis. The Fourth Circuit has explained, however, that "a claim of retaliation for the filing of an EEOC charge as discrimination is indeed like or reasonably related to and growing out of such allegations." *Jones*, 551 F.3d at 302 (internal quotation marks omitted). Thus, the Court has subject matter jurisdiction over her ADEA retaliation claim, as her EEOC charge alleged discrimination, retaliation, and harassment in violation of the ADEA.

Dismiss on the grounds that it does not have subject matter jurisdiction over any of Plaintiff's Title VII claims.

**B.  Motions for Summary Judgment**

The Court addresses Plaintiff's remaining claims for discrimination, retaliation, and hostile work environment in violation of the ADEA, and for wrongful termination under Virginia law, in the context of the parties' cross motions for summary judgment.

**1.  Age Discrimination**

"Generally speaking, to establish a prima facie case of unlawful age discrimination," the plaintiff "must show that (1) [s]he is a member of the protected class; (2) [s]he was qualified for the job and met [the employer's] legitimate expectations; (3) [s]he was discharged despite h[er] qualifications and performance; and (4) following h[er] discharge, [s]he was replaced by a substantially younger individual with comparable qualifications." *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 513 (4th Cir. 2006). "A plaintiff suing under the ADEA must show that 'but for' age discrimination, the adverse employment action would not have occurred." *Kirkland v. Mabus*, 206 F. Supp. 3d 1073, 1082 (E.D. Va. 2016) (citing *Gross v. FBL Fin. Servs. Inc.*, 557 U.S. 167, 176 (2009)).

Here, Plaintiff has failed to establish a prima facie case of discrimination. First, she has presented no evidence that would allow a reasonable fact finder to conclude that her performance met Hilldrup's legitimate expectations. All of the evidence in the record pertaining to her performance indicates that she failed to meet performance expectation from the start of her job. *See* [Doc. No. 22-2, 22-3, 22-5]; *see also Evans*, 80 F.3d at 960-61 ("It is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff.") (internal quotation marks omitted). It is also undisputed that Ms. Wright was replaced by an individual who is older

than she is. *See* Curtis Decl. [Doc. No. 22-5]. For these reasons, even viewing the evidence and all reasonable inference in the light most favorable to Ms. Wright, she has not made out a prima facie case of discrimination on the basis of her age in violation of the ADEA.

2.  **Retaliation**

"An employer violates the ADEA by retaliating against an employee for engaging in a protected activity." *Johnson v. Mechanics & Farmers Bank*, 309 F. App'x 675, 684 (4th Cir. 2009). "The elements of a prima facie case of retaliation are (1) the plaintiff engaged in a protected activity, (2) the employer took an adverse employment action against the plaintiff, and (3) a causal connection existed between the protected activity and the adverse employment action." *Id.* "If the employee establishes a prima facie case, the employer may rebut it by presenting evidence of a legitimate, non-retaliatory reason for the adverse action." *Id.* "After the employer presents evidence of its legitimate, non-retaliatory reason, the burden shifts back to the employee to show that the employer's proffered reason is pretextual." *Id.* Here, Plaintiff also fails to make out a prima facie case of retaliation because there is insufficient evidence for a reasonable fact finder to find a causal connection between her complaint to the EEOC and her termination on October 6, 2016. Hilldrup learned about Ms. Wright's EEOC complaint no later than June 29, 2016. This temporal proximity of more than three months is too long to establish a causal connection in itself, as "[e]ven a mere ten-week separation between the protected activity and termination 'is sufficiently long so as to weaken significantly the inference of causation between the two events.'" *Perry v. Kappos*, 489 F. App'x 637, 643 (4th Cir. 2012) (quoting *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003); *see Pascual v. Lowe's Home Centers, Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006) ("In this case, at least three to four months separated the termination of Pascual's employment and the claimed protected activities. We find that this

time period is too long to establish a causal connection by temporal proximity alone."). Hilldrup's actions surrounding Ms. Wright's one-year performance review in August 2016 also do not evidence "continuing retaliatory conduct and animus" in the period between her complaint and termination, as the issues Hilldrup raised are the same as those identified in her six-month review in April 2016, before her complaints to Hilldrup's Human Resources Department and the EEOC. *See Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 309 (4th Cir. 2006) ("The actions that led to Francis' probation and termination began before her protected activity, belying the conclusion that a reasonable factfinder might find that BAH's activity was motivated by Francis' USERRA complaints."). For the same reason, Ms. Wright has not presented any evidence sufficient to raise an inference that the legitimate, non-retaliatory justification for her termination that Hilldrup has presented, inadequate job performance, is a pretext for retaliation to her EEOC complaint. For these reasons, even viewing the evidence and all reasonable inference in the light most favorable to Ms. Wright, she has not made out a prima facie case of retaliation under the ADEA.

### 3. Hostile Work Environment

The elements of a prima facie case of hostile work environment are: "(1) the harassment was unwelcome; (2) the harassment was based on [plaintiff's] . . . age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer."[4] *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998). "A hostile environment exists '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or

---

[4] The Fourth Circuit has assumed without deciding that a hostile work environment claim is available under the ADEA. *See Baqir v. Principi*, 434 F.3d 733, 746 n.14 (4th Cir. 2006) (citing *Burns v. AAF-McQuay, Inc.*, 166 F.3d 292, 294 (4th Cir. 1999), and *Causey*, 162 F.3d at 801 n. 2).

pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)) (alternation in original).

While Ms. Wright's complaint asserts allegations of harassment, she has offered no evidence sufficient for a reasonable fact finder to conclude that harassment did in fact occur. Even assuming she was harassed, there is no evidentiary basis from which to infer that she was harassed based on her age. The record is also insufficient to establish that any harassment was sufficiently severe or pervasive. At most Ms. Wright identifies a few isolated incidents over a 10-month period; and the Supreme Court "has stressed that 'simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.'" *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 298–99 (4th Cir. 2015) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). For these reasons, even viewing the evidence and all reasonable inference in the light most favorable to Ms. Wright, she has not made out a prima facie case of hostile work environment under the ADEA.

4. **Wrongful Termination under Virginia Law**

Finally, Ms. Wright has no claim for wrongful termination under Virginia law. As an at-will employee, there is nothing in her contract that prohibited Hilldrup from terminating her. There is also no recognized Virginia common law claim for wrongful termination on the basis of age, race, sex or other protected categories covered by the Virginia Human Rights Act. *See Conner v. Nat'l Pest Control Ass'n, Inc.*, 513 S.E.2d 398, 399-400 (Va. 1999); Va. Code Ann. §

2.2-3903(B).[5] For these reasons, Ms. Wright's Virginia state law claim for wrongful termination fails as a matter of law.

## CONCLUSION

For the above reasons, it is hereby

ORDERED that and Defendant's Motion to Dismiss Complaint for Lack of Subject Matter Jurisdiction and Failure to State a Claim upon Which Relief Can Be Granted [Doc. No. 9] be, and the same hereby is, GRANTED in part and DENIED in part. It is granted on the grounds that the Court does not have subject matter jurisdiction over any Title VII claims by Plaintiff and is otherwise denied as moot; and it is further

ORDERED that Plaintiff's Motion for Summary Judgement and Rebuttal of Defendant's Memorandum in Support of Motion for Summary Judgment [Doc. No. 32] be, and the same hereby is, DENIED; and it is further

ORDERED that Defendant's Motion for Summary Judgment [Doc. No. 21] be, and the same hereby is, GRANTED as to Plaintiff's ADEA claims for discrimination, retaliation, and hostile work environment, and Virginia state law claim for wrongful termination; and this case is DISMISSED.

---

[5] The Virginia Human Rights Act provides for protections against discrimination committed by employers not covered by the federal discrimination laws, *i.e.*, employers with less than 15 employees for race and sex discrimination claims and less than 20 for age discrimination claims. *See* Va. Code Ann. § 2.2-3903(B), (D); *see also Jones v. Kroger Ltd. P'ship I*, 80 F. Supp. 3d 709, 716 (W.D. Va. 2015); *Walton v. Sch. Bd. of Gloucester Cty.*, 4:06-cv-75, 2006 WL 3838235, at *5 (E.D. Va. Dec. 4, 2006) ("In this case, Walton cannot maintain her VHRA claim against the School Board because it is clear that the School Board has at least fifteen employees."). Ms. Wright's Charge indicates that Hilldrup employs much more than twenty people.

**This is a final order for purposes of appeal.** To appeal, Plaintiff must file a written Notice of Appeal with the Clerk of the Court within thirty (30) days of the date of this Order. A Notice of Appeal is a short statement stating a desire to appeal an order and identifying the date of the order Plaintiff wishes to appeal. Failure to file a timely Notice of Appeal waives Plaintiff's right to appeal this decision.

The Clerk is directed to forward a copy of this Order to all counsel of record and to Plaintiff and to enter judgement in favor of Defendant under Fed. R. Civ. P. 58.

/s/
Anthony J. Trenga
United States District Judge

May 23, 2017
Alexandria, Virginia